UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

TIMOTHY J. BUNCE,

                                        Plaintiff,

                                                                        5:19-CV-266
v.                                                                      (TWD)

FARM SERVICE AGENCY, U.S.D.A.,

                                        Defendants.

───────────────────────────────────────────

APPEARANCES:                              OF COUNSEL:

TIMOTHY J. BUNCE
  Plaintiff, *pro se*
189 Dennis Rd.
Oswego, NY 16126

ANTOINETTE T. BACON                       EMER M. STACK, ESQ.
Acting United States Attorney             Assistant United States Attorney
Northern District of New York
  *Attorney for Defendants*
100 South Clinton Street
Syracuse, New York 13261

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

Timothy J. Bunce ("Plaintiff") seeks review of the Farm Service Agency's ("FSA")

action which he appealed to the United States Department of Agriculture ("U.S.D.A."), Office of

the Secretary, National Appeals Division ("NAD") (collectively "Defendants").  (Dkt No. 29.)

Specifically, Plaintiff seeks judicial review, pursuant to 7 U.S.C. § 6999, and the Administrative

Procedure Act, 5 U.S.C. §§ 701-706 ("APA"), of Defendants' decisions to deny his application

for primary loan servicing with respect to an existing loan as well as his application for a new

loan.  Presently before the Court is Defendants' motion for summary judgment.  (Dkt. No. 54.)

For the reasons that follow, Defendants' motion is granted and this case is dismissed.

## I.    RELEVANT BACKGROUND

On February 10, 2016, Plaintiff obtained a farm loan from Defendants that was secured by a real estate mortgage on his real property and a perfected security interest in his crops, livestock, farm machinery and equipment, inventory, and accounts.  (Defendants' Statement of Material Facts, Dkt. No. 54-17 at ¶¶ 1-3.)  Although the principal amount of the loan was listed as $44,700.00, only $31,877.00 was distributed to Plaintiff.  *Id*. at ¶ 4.  On December 15, 2016, Defendants sent Plaintiff a notice for loan servicing.  *Id*. at ¶ 5.

On February 1, 2017, Plaintiff submitted Form FSA-2513, "Borrower Response to Notice of the Availability of Loan Servicing," indicating his intent to apply for loan servicing.  *Id*. at ¶ 6.  At the same time, Plaintiff also submitted an FSA-2001, "Request for Direct Loan Assistance," seeking additional loan funds in the amount of $67,106.00.  *Id*. at ¶ 7.  In support of his application, Plaintiff signed a Farm Business Plan Worksheet for the production cycle beginning on February 1, 2017, and ending on February 1, 2018.  *Id*. at ¶ 8.  The Farm Business Plan Worksheet listed Plaintiff's projected income as $69,517.00 and his projected farm operating expenses as $34,996.00.  *Id*.  On February 1, 2017, Plaintiff signed a Balance Sheet of his total assets and liabilities as of December 16, 2016, in which Plaintiff listed total liabilities in the amount of $35,472.00 and total personal liabilities of $4,242.00.  *Id*. at ¶ 9.  Defendants accepted Plaintiff's applications for loan assistance as complete on February 21, 2017.  *Id*. at ¶ 10.

On May 23, 2017, the FSA entered Plaintiff's financial information into its Debt and Loan Restructuring System ("DALR$") computer program, which generated an "Outcome Summary Report."  *Id*. at ¶ 11.  Based on the FSA's projections of Plaintiff's cash inflow and cash outflow, the DALR$ program determined Plaintiff could not develop a feasible operation

because he was $12,980.72 short from being able to make annual payments on his debts.  *Id*. at ¶ 12.

On May 31, 2017, the FSA denied Plaintiff's request for a subsequent loan and on June 13, 2017, denied Plaintiff's request for primary loan servicing.  *Id*. at ¶¶ 13-14.  On June 13, 2017, Plaintiff responded to the FSA's denials by requesting to participate in mediation.  *Id*. at ¶ 15.  On August 2, 2017, the parties participated in mediation but did not reach an agreement. *Id*. at ¶ 16.

On August 3, 2017, Plaintiff appealed both of the FSA's adverse decisions to the NAD. *Id*. at ¶ 17.  After several preliminary steps including a hearing, the NAD Administrative Law Judge issued an Appeal Determination which upheld both of Defendants' decisions.  *Id*. at ¶¶ 18-21.  On December 8, 2017, Plaintiff filed a request for a Director Review of the Appeal Determination.  *Id*. at ¶ 22.  The NAD Acting Deputy Director upheld the Appeal Determination. *Id*. at ¶ 23.  Then, on February 4, 2019, NAD denied Plaintiff's request for reconsideration.  *Id*. at ¶ 24.

Plaintiff commenced this action on February 26, 2019.  (Dkt. No. 1.)  Plaintiff subsequently amended his complaint.  (Dkt. No. 29.)  As noted above, Plaintiff challenges Defendants' denial of his farm servicing loan application and his application for a new loan.  *Id*. Construed liberally, Plaintiff argues the FSA erred in substituting different figures from the estimate he provided into the DALR$ system which led to the conclusion that he did not have a feasible business plan.  *Id*. at ¶ 78, 82, 83, 84, 85.  Relatedly, Plaintiff asserts the local FSA Loan Manager was biased and failed to meet with Plaintiff and reconcile apparent disagreements in his proposed plan and the financial plan the FSA relied upon to deny his applications.  *Id*. at ¶¶ 69,

70, 73, 80.  Finally, Plaintiff makes several arguments that Defendants failed to provide him

appropriate documentation or verify the administrative record.  *Id*. at ¶¶ 71, 72, 74, 75, 76, 77.

Defendants filed a motion for summary judgment arguing Plaintiff has failed to show that

the FSA's decision to deny his loan servicing and loan application was unlawful.  (Dkt. No. 54.)

## II.   DISCUSSION

### a.   Legal Standards

In deciding a motion for summary judgment under Rule 56, courts "grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986); *Gallo v. Prudential Residential Servs. L.P.*, 22 F.3d 1219,

1223 (2d Cir. 1994).  However, where "a party seeks review of agency action under the APA, the

district judge sits as an appellate tribunal, and the entire case on review is a question of law."

*Ass'n of Proprietary Colls. v. Duncan*, 107 F. Supp. 3d 332, 344 (S.D.N.Y. 2015) (alteration

accepted and quotation marks omitted).  Accordingly, the usual summary judgment standard

under Rule 56 does not apply because the Court need only "address legal questions" to decide

"whether the agency acted arbitrarily, capriciously or in some other way that violates 5 U.S.C.

§ 706."  *Id*.  Nonetheless, summary judgment is appropriate in APA cases because the questions

on review are purely legal and are "amenable to summary disposition."  *Id*. (quotation marks

omitted).

Under the APA, a reviewing court must uphold agency action unless it is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C.

§ 706(2)(A).  Under this "deferential standard of review," a reviewing court "may not substitute

[its] judgment for that of the agency."  *Guertin v. United States*, 743 F.3d 382, 385–86 (2d Cir.

4

2014) (internal quotation marks and alterations omitted).  The scope of review under this standard is narrow because "a court must be reluctant to reverse results supported by a weight of considered and carefully articulated expert opinion."  *Fund for Animals v. Kempthorne*, 538 F.3d 124, 132 (2d Cir. 2008) (internal quotation marks and alterations omitted).  An agency decision will thus only be set aside if it

> has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 446 (2d Cir. 2013) (quoting *Nat'l Assoc. of Home Builders v. Def. of Wildlife*, 551 U.S. 644, 658 (2007)).  "Plaintiffs bear the burden of showing, by citation to evidence in the administrative record, that an agency's actions are arbitrary and capricious."  *Miezgiel v. Holder*, 33 F. Supp. 3d 184, 189 (E.D.N.Y. 2014).

   b.    **Analysis**

The FSA provides financial assistance in the form of farm loans to eligible farmers to start and continue farming operations.  7 C.F.R. § 761.1.  Specifically, the FSA provides direct operating loans to eligible applicants to assist with the financial costs of operating a farm. 7 C.F.R. §§ 761.2, 764.251(a).  The FSA will approve a request for a farm loan only if the applicant has a feasible farm operating plan and demonstrates that all other credit needs can be met.  7 C.F.R. § 764.401(a)(1)(i).  Additionally, the FSA may provide primary loan servicing options to farm loan borrowers who are financially distressed.  7 C.F.R. §§ 766.101(a), 766.105(a).  Like with an original loan, for primary loan servicing, the FSA must determine that the applicant has a feasible farm operating plan.  7 C.F.R. § 766.105(b)(3).

5

Here, the primary concern in this case is whether Defendants' decision to deny Plaintiff's applications for loan servicing and a new loan was arbitrary and capricious. As noted in the ALJ's decision, the critical consideration relative to this decision was whether Plaintiff had a feasible farm operating plan. (Dkt. No. 54-3 at 66; 54-8 at 70.) A feasible plan of operations occurs when an applicant's cash flow budget or farm operating plan indicates that there is enough cash inflow to pay all cash outflow. 7 C.F.R. § 761.2(b).

As noted above, the Court is obliged under the APA to uphold agency action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court agrees with Defendants that their decisions related to denying Plaintiff's loan servicing application and his application for a new loan did not rise to such a level. Here, because the FSA had to consider whether Plaintiff had a feasible operating plan, 7 C.F.R. §§ 764.401(a)(1)(i), 766.105(b)(3), and the FSA was permitted to create its own plan if it did not agree with Plaintiffs, *id.* at § 761.104(g), it was reasonable for FSA to conclude that Plaintiff did not qualify for loan servicing or a new loan. Moreover, in concluding that Plaintiff's arguments to the contrary were not persuasive, the ALJ reasonably considered all the relevant evidence and explained his basis for rejecting the same. Defendants provided a written explanation grounded in the evidentiary record and it provided Plaintiff multiple opportunities to challenge the original decisions. The Court therefore concludes that Defendants' decision to deny Plaintiff's application for a loan and for loan servicing was neither arbitrary nor capricious within the meaning of the APA.

None of Plaintiff's arguments to the contrary change the Court's conclusion. For one, Plaintiff's challenge to Defendants' decisions to reject Plaintiff's numbers and instead use its own figures in the DARL$ system is not a basis to overturn the ultimate decisions. Most

importantly, the ALJ considered and rejected the same arguments during the administrative

appeal and the Court is not permitted to substitute its judgment for that of the agency on matters

committed to agency expertise.  *Guertin*, 743 F.3d at 385–86.

Moreover, as Defendants explain, FSA regulations specifically authorize it to "make loan

approval and servicing determinations based on the Agency's revised farm operating plan"

where the applicant's plan is inaccurate and the parties cannot reach an agreement.  7 C.F.R.

§ 761.104(g).  The Court notes this regulation does imply that the FSA is obligated to attempt to

reconcile disagreements with an applicant in their proposed operating plan before substituting its

projections.  *See id*.  Nevertheless, the Court is "mindful of the APA's admonition that 'due

account shall be taken of the rule of prejudicial error.'"  *Green Island Power Auth. v. F.E.R.C.*,

577 F.3d 148, 165 (2d Cir. 2009) (quoting 5.U.S.C. § 706; other citations omitted).  "The rule of

prejudicial error typically eliminates the necessity of remand following judicial review when the

error that the agency has made was not prejudicial and did not impinge on fundamental rights."

*N.Y. Pub. Interest Research Group v. Whitman*, 321 F.3d 316, 333 (2d Cir. 2003) (emphasis

omitted).  Thus, the Court will not disturb Defendants' decisions if it "can determine that the

outcome of the administrative proceedings will be the same absent [FSA's] error."  *Green Island*,

577 F.3d at 165 (citation omitted).  Here, as was discussed in the ALJ's decision, even if the FSA

used Plaintiff's proposed operating plan, it would still have demonstrated a negative cash flow

balance and would therefore render him ineligible for a new loan or loan servicing.  (Dkt. No.

54-2 at 8.)  Therefore, any error regarding what figures the FSA ultimately used to consider his

operating plan did not alter the ultimate decision to deny Plaintiff's applications.

Additionally, Plaintiff's arguments regarding the alleged bias and misconduct from the

Jefferson County FSA office in Watertown, New York do not provide a basis to vacate the FSA's decision.  To that end, much of the same evidence Plaintiff presents to this Court was considered and ultimately rejected by the ALJ during the agency process.  Importantly, the "reviewing court may not itself weigh the evidence or substitute its judgment for that of the agency."  *Constitution Pipeline Co., LLC v. New York State Dep't of Envtl. Conservation*, 868 F.3d 87, 102 (2d Cir. 2017) (internal citation omitted).  In this case, the claims of bias largely depended on the ALJ's credibility determination, and "credibility determinations are entitled to great deference unless inherently incredible or patently unreasonable."  *Lehoczky v. Commodity Futures Trading Comm'n*, 125 F.3d 844 (2d Cir. 1997).  Accordingly, Plaintiff's arguments regarding the perceived bias of the FSA Loan Manager are not material to this dispute and do not provide a basis to overturn the Defendants' ultimate decisions.

III.     **CONCLUSION**

After a careful review of the record and the evidence and based on the undisputed facts Defendants have marshalled, the Court concludes Defendants' decisions denying Plaintiff's applications for loan servicing and for a new loan were not arbitrary, capricious or an abuse of discretion.

**WHEREFORE**, it is hereby

**ORDERED** that Defendants' motion for summary judgement (Dkt. No. 54) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's action is **DISMISSED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on Plaintiff.

**IT IS SO ORDERED.**

Dated:  February 15, 2021
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge